UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KRZYSZTOF WATROBA,

    Plaintiff,

v.

MERCHANTS & MEDICAL CREDIT
CORPORATION, INC.,

    Defendant.

Case No. 1:21-cv-04373

## COMPLAINT

**NOW COMES** Plaintiff, KRZYSZTOF WATROBA, through undersigned counsel, complaining of Defendant, MERCHANTS & MEDICAL CREDIT CORPORATION, INC., as follows:

## NATURE OF THE ACTION

1.    This action is seeking redress for Defendant's violation(s) of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq*.

2.    Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e).

3.    The Act regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects … debts owed or due or asserted to be owed or due another." §§ 1692a(5), (6).

4.    Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, § 1692e(2)(A); communicating

1

with consumers at an "unusual time or place" likely to be inconvenient to the consumer, § 1692c(a)(1); or using obscene or profane language or violence of the threat thereof, §§ 1692d(1), (2). *See* generally §§ 1692b-1692j; *Heintz v. Jenkins*, 514 U.S. 291, 292-293, 115 S. Ct. 1489, 131 L. ed. 2d 395 (1995).

5.      The Act is enforced through administrative actions and private lawsuits. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577, 130 S. Ct. 1605 (2010).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

8.      KRZYSZTOF WATROBA ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at 1716 Ardwick Drive, Hoffman Estates, Illinois 60169-6703.

9.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

10.     MERCHANTS & MEDICAL CREDIT CORPORATION, INC. ("Defendant") is a corporation organized and existing under the laws of the state of Michigan.

11.     Defendant maintains a principal place of business at 6324 Taylor Drive, Flint, Michigan 48507-4685.

12.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).[1]

---

[1] **About MMCC.**  Merchants & Medical Credit Corporation (MMCC) was established in the state of Michigan on January 18, 1960. We are a multifaceted agency providing medical billing and collection services to local, state, and nationally-based clients.

http://www.mermed.com/about.html (last accessed August 17, 2021).

13.     Defendant uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

14.     Plaintiff applied for a Kohl's Charge account through Capital One, N.A.

15.     Plaintiff's application was approved, and Plaintiff received a credit card in the mail bearing an account number ending in 6701 (the "Account").

16.     Plaintiff accepted the terms and conditions by using the credit card for personal and household purchases.

17.     Over time, Plaintiff made $591.78 in charges to this account.

18.     Plaintiff's $591.78 balance is a "debt" as defined by 15 U.S.C. § 1692a(5).

19.     However, Plaintiff's financial situation changed, Plaintiff defaulted on payments, and Plaintiff's $591.78 balance was charged-off and was referred for collection.

20.     Defendant communicated with Plaintiff regarding this debt through Hatteras[2], a Tinton Falls, New Jersey-located commercial letter vendor.

21.     Upon information and belief, Defendant electronically transmitted to Hatteras certain information about Plaintiff, including, among other things: (1) his status as a debtor; (2) the exact balance of his debt; (3) the entity to which he owed the debt; and (4) that the debt concerned Plaintiff's Kohl's Credit Card account.

22.     Hatteras used this information to generate and mail Plaintiff "dunning" letters.

---

[2] Hatteras gets your marketing message into your customers' hands in the fastest, most efficient way possible, with integrated printing, warehousing, data processing and mailing services under one roof. As a USPS Full-Service Mail Service Provider, we know how to optimize your campaign for maximum postal discounts – because shaving pennies off each piece can mean thousands of dollars in savings. https://hatteras.us/services/services-mailing-data-services (last accessed August 17, 2021).

23.     These "dunning" letters contained highly sensitive and personal information related to Plaintiff, including: (1) Plaintiff's name and address; (2) that Plaintiff owed a debt; (3) the entity to which Plaintiff owed the debt; (4) the exact balance of Plaintiff's debt; (5) that Plaintiff's debt was in default; and (6) that Plaintiff's debt was being collected by a debt collector.

## ARTICLE III STANDING

24.     "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," such that "a plaintiff … need not allege any additional harm beyond the one Congress has identified." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549, 194 L.3d 2d 635 (2016).

25.     *Spokeo* instructs that in determining whether a statutory violation confers Article III standing, we should consider "history and the judgment of Congress." *Id*.

26.     Starting with history, we can discern a concrete injury where "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*.

27.     Put differently, we look to "whether the statutory violation at issue led to a type of harm that has historically been recognized as actionable." *Muransky v. Godiva Chocolatier, Inc*., 979 F.3d 917, 926 (11th Cir. 2020) (*en banc*).

28.     *Muransky* explains that the "fit between a new statute and a pedigreed common-law cause of action need not be perfect, but we are called to consider at a minimum whether the harms matchup between the two." *Id*.

29.     For more than a century, invasions of personal privacy have been regarded as a valid basis for tort suits in American courts. *See, e.g., Pavesich v. New England Life Ins. Co*., 122

Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918).

30.     By 1977, the Restatement (Second) noted that "the existence of a right of privacy is now recognized in the great majority of the American jurisdictions that have considered the question." *Restatement (Second) of Torts* § 652A cmt. a. (Am. Law Inst. 1977).

31.     More particularly, the term "invasion of privacy" comprises an identifiable family of common-law torts—including, most relevantly here, "public disclosure of private facts." *Invasion of Privacy*, Black's Law Dictionary 952 (10th ed. 2014).

32.     It is hornbook law that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Restatement (Second) of Torts* § 652D (1977); *accord, e.g.*, 77 C.J.S. Right of Privacy and Publicity § 32; 62A Am. Jur. 2d Privacy § 79.

33.     Indeed, the Supreme Court itself has recognized "the individual interest in avoiding disclosure of personal matters" and has recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989).

34.     Having established the historical pedigree of invasion-of-privacy torts—in particular, the sub-species applicable to the public disclosure of private facts—we next consider whether Defendant's alleged statutory violation is sufficiently analogous.

35.     Notably, the FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

36. And to that end, the statutory provision under which Plaintiff has sued here expressly prohibits a debt collector from "communicat[ing]" with any but a few persons or entities "in connection with the collection of any debt." *Id*. § 1692c(b).

37. Although § 1692c(b) isn't identical in all respects to the invasion-of-privacy tort, we have no difficulty concluding that it bears "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.

38. Although it presents a closer question, we conclude that "the judgment of Congress" also favors Plaintiff.

39. Congress, of course, expresses its "judgment" in only one way—through the text of duly enacted statutes.

40. Even assuming that § 1692c(b) does not clearly enough express Congress's judgment that injuries of the sort that Plaintiff alleges are actionable, here Congress went further to "explain itself." *Huff v. Telecheck Servs*., 923 F.3d 458, 466 (6th Cir. 2019).

41. In particular, as already noted, in a section of the FDCPA titled "Congressional findings and declaration of purpose," Congress identified the "invasion[] of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

42. Because (1) § 1692c(b) bears a close relationship to a harm that American courts have long recognized as cognizable and (2) Congress's judgment indicates that violations of §1692c(b) constitute a concrete injury, Plaintiff has the requisite standing to sue.

## CLAIMS FOR RELIEF

### COUNT I:
### Fair Debt Collection Practices Act—15 U.S.C. § 1692 *et seq.*

43. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

### Violation of 15 U.S.C. § 1692c

44. Section 1692c(b) states that, subject to several exceptions, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer. 15 U.S.C. §1692c(b).

45. Defendant's transmittal of Plaintiff's personal information to Hatteras constitutes a "communication" as defined by 15 U.S.C. § 1692a(2).

46. Defendant's communication with Hatteras was in connection with the collection of Plaintiff's $591.78 Kohl's Credit Card account balance.

47. Specifically, Defendant's transmittal to Hatteras included specific details regarding Plaintiff's debt: Plaintiff's status as a debtor, the precise amount of his debt, the entity to which the debt was owed, and the fact that the debt concerned Plaintiff's Kohl's Credit Card account, among other things, such that it violates § 1692c(b).

48. Plaintiff may enforce the provisions of 15 U.S.C. § 1692c(b) pursuant to section k of the FDCPA (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of -

    (1)    any actual damage sustained by such person as a result of such failure;

    (2)

(A)     in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

(3)     in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

**WHEREFORE**, Plaintiff requests the following relief:

A.     a finding that Defendant violated 15 U.S.C. § 1692c(b);

B.     an award of any actual damages sustained by Plaintiff as a result of Defendant's violation(s);

C.     an award of such additional damages, as the Court may allow, but not exceeding $1,000.00;

D.     an award of costs of this action, together with reasonable attorney's fees as determined by this Court; and

E.     an award of such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: August 17, 2021          Respectfully submitted,

**KRZYSZTOF WATROBA**

By: */s/ Joseph S. Davidson*

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road
Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com